RICHARD A. HEARN (ISB No. 5574)
HEARN LAW, PLC
155 S. 2nd Avenue
P.O. Box 70
Pocatello, Idaho 83204
Telephone: (208) 904-0004
Facsimile: (208) 904-1816
E-mail: hearn@hearnlawyers.com

BRON M. RAMMELL (ISB No. 4389)
MAY RAMMELL
216 W. Whitman
P.O. Box 370
Pocatello, Idaho 83204
Telephone: (208) 233-0132
Facsimile: (208) 234-2961
E-mail: bron@mrtlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT ISAKSEN, <br><br> Plaintiff, <br><br> v. <br><br> AMY'S KITCHEN, INC., a Business Corporation, <br><br> Defendant. | Case No.: 4:19-cv-77 <br><br> VERIFIED COMPLAINT |

COMES NOW Plaintiff, Scott Isaksen, by and through his counsel of record, Richard A. Hearn, HEARN LAW, PLC, and hereby complain, state and allege as follows:

VERIFIED COMPLAINT – Page 1

## INTRODUCTION

Plaintiff Scott Isaksen brings this lawsuit against his former employer, Defendant Amy's Kitchen, Inc., alleging discrimination based upon religion and retaliation for reporting sexual harassment resulting in the termination of his employment.

## JURISDICTION AND VENUE

1. Plaintiff sets forth claims arising under both federal and Idaho law.

2. 28 U.S.C. § 1331 confers subject matter jurisdiction on this Court for all claims arising under federal law.

3. 28 U.S.C. § 1367 confers supplemental jurisdiction for all claims arising under Idaho law.

4. Most events in this lawsuit took place in Bannock County, state of Idaho.

5. Plaintiff lay venue in this Court per 28 U.S.C. § 1391.

## PARTIES

6. Scott Isaksen ("*Plaintiff*" and/or "*Isaksen*") currently resides and at all times relevant resided in Chubbuck, Idaho.

7. Amy's Kitchen, Inc. ("*Defendant*" and/or "*Amy's Kitchen*") was incorporated in California in 1988 and has a Certificate of Registration issued by the Idaho Secretary of State's office which allows Amy's Kitchen to transact business in Idaho as a foreign business.

8. Amy's Kitchen's principle place of business in Idaho is located at 221 Phil Meador Avenue, Pocatello, Idaho.

## FACTS

9. Plaintiff Isaksen began working for Defendant Amy's Kitchen at its Pocatello, Idaho, location in July of 2016.

10. Plaintiff is currently and was at all times relevant a member of the Church of Jesus Christ of Latter-Day Saints ("LDS").

11. During Plaintiff's employment with Defendant in Pocatello, Idaho, Defendant became aware that Plaintiff was a practicing member of the Church of Jesus Christ of Latter-Day Saints.

12. Plaintiff reported an issue of sexual harassment to Defendant's Human Resources Department in March of 2017.

13. Both the alleged harasser and the alleged harasser's mother, Rosemary Ponce, were employed by Defendant.

14. Shortly thereafter, Plaintiff cautioned one of the team leads he supervised, Luis Flores, about what Plaintiff perceived to have been an inappropriate relationship between the team lead and one of the team lead's subordinates.

15. Defendant's employees, Rosemary Ponce and Luis Flores, retaliated against Plaintiff by falsely accusing him of poor work performance.

16. Based at least in part on the false allegations of Ponce and Flores, Plaintiff was placed on a Performance Improvement Plan and eventually terminated from his position as a production supervisor by Defendant on or about August 20, 2018.

17. In the fall of 2016, Joel Gomez, a manager at Amy's Kitchen, suggested Plaintiff drink coffee to help with sleepiness during planning meetings at the end of Plaintiff's work during the dayshift even though Plaintiff had explained that he

did not drink coffee due to his religious beliefs as a member of the Church of Jesus Christ of Latter-Day Saints.

18. Mr. Gomez told Plaintiff that, if he drank coffee, no one needed to know.

19. At the time, Mr. Gomez was the Kitchen Manager and Frozen Foods Manager.

20. After Plaintiff was changed from the dayshift in 2016 to the swing-shift in 2017, Mr. Gomez and Plaintiff attended fewer meetings together. The meetings in 2017 were also shorter than those in 2017 and occurred at the beginning of Plaintiff's work on the swing-shift. Plaintiff had no problems with sleepiness during meetings in 2017.

21. Despite there having been no problem with Plaintiff appearing excessively sleepy in meetings during 2017, Mr. Gomez still added the following sentence to Plaintiff's Performance Evaluation for 2017: "Also, Scott tends to get really sleepy during meetings and has been reminded about participating more verbally in order to stay engaged, this behavior looks unprofessional and improvement is required."

22. There was no basis for Mr. Gomez's assertion in Plaintiff's Performance Evaluation that Plaintiff got "really sleepy during meetings" in 2017.

23. To the best of Plaintiff's knowledge, Gomez, Ponce and Flores were not members of the Church of Jesus Christ of Latter-Day Saints.

24. In August of 2017, Plaintiff requested separate travel arrangements to attend "Amy's Leadership Academy" in California so that he and a female colleague would not need to travel together.

25. After Plaintiff's request to have separate travel arrangements were approved, Mr. Gomez questioned Plaintiff about his request and asked Plaintiff whether it was "another crazy Mormon thing."

26. At a company retreat held in Park City, Utah, during the summer of 2017, Defendant's Human Resources Manager, Shannon Carr, spoke of her dislike for Mormons because, when her children were young, the parents of LDS children in the neighborhood allegedly would not let their children play with her children.

27. Shannon Carr's comments about her dislike of Mormons were made in front of several of Defendant's management personnel.

28. Defendant's Project Manager, Johnny Myers, asked Rich Livermore – Defendant's Frozen Foods Manager from September through November of 2017 – why Plaintiff had to have separate travel arrangements in order to attend Amy's Leadership Academy.

29. Myers then asked Livermore whether Plaintiff's separate travel arrangements was "another weird Mormon thing" and stated that he "didn't know we were still hiring Mormons."

30. Defendant terminated Plaintiff Isaksen's employment in August of 2018.

31. Plaintiff's replacement, Yolanda Sotelo, was not LDS.

32. Defendant terminated the employment of its Plant Manager, Dave Samuelson, who is LDS in the fall of 2017, and he was replaced as Defendant's Plant Manager by Lynn Davis who is not LDS.

33. Defendant terminated the employment of its Frozen Foods Manager, Rich Livermore, who is LDS in the fall of 2017, and he was replaced as Defendant's Frozen Foods Manager by Shawn Merrill who is not LDS.

34. Defendant terminated the employment of its Kitchen Manager, Scott Raschke, who is LDS in early 2018, and he was replaced as Defendant's Kitchen Manager by Elias Rangel who is not LDS.

35. The proffered reasons provided for Plaintiff's termination by Defendant related to alleged performance issues were pretextual and intended to conceal the true discriminatory and retaliatory reasons for Plaintiff's termination by Defendant.

36. Plaintiff received his Notice of Administrative Dismissal and Right to Sue letter from the Idaho Human Rights Commission on December 6, 2018.

## CLAIMS

### CLAIM I
**(Retaliation for Reporting Sexual Harassment)**

37. Plaintiff hereby repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

38. 42 U.S.C. § 2000e-3(a) makes it an unlawful employment practice for an employer to discriminate against any of its employees because that employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

39. Defendant violated 42 U.S.C. § 2000e-3(a) when it terminated Plaintiff in retaliation for Plaintiff's reporting of alleged sexual harassment by Defendant's employees.

### CLAIM II

**(Discrimination Based upon Religion in Violation of Title VII)**

40. Plaintiff hereby repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

41. 42 U.S.C. § 2000e-2(a) makes it an unlawful employment practice to terminate or otherwise discriminate an individual because of the individual's race, color, religion, sex or national origin.

42. Defendant violated 42 U.S.C. § 2000e-2(a) when it terminated Plaintiff because of his religion as alleged above.

## CLAIM III
**(Discrimination in Violation of Idaho Code, Title 67, Chapter 59)**

43. Plaintiff hereby repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

44. Idaho Code § 67-5909 makes it an unlawful employment practice for an employer in Idaho to discharge or to otherwise discriminate against a person because of, or, on the basis of, race, color, religion, sex or national origin.

45. Defendant violated Idaho Code § 67-5909 when it terminated Plaintiff because of his religion as alleged above.

## CLAIM IV
**(Negligent Infliction of Emotion Distress)**

46. Plaintiff hereby repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

47. In Idaho, the elements of a claim for negligent infliction of emotional distress are (1) a duty recognized by law requiring a defendant to conform to a certain

standard of conduct, (2) a breach of that duty, (3) a causal connection between the conduct and the plaintiff's injury, and (4) actual loss or damage. In addition, for a claim of negligent infliction of emotional distress to lie, there must be some physical manifestation of the plaintiff's emotional distress.

48. Defendant's discriminatory and retaliatory conduct toward Plaintiff as alleged herein breached certain legal duties owed Plaintiff and caused Plaintiff to suffer emotional distress.

49. Plaintiff suffered emotional distress as a result of Defendant's conduct as alleged herein and that emotional distress was manifested physically.

## PLAINTIFF REQUESTS A JURY TRIAL

Plaintiff demands jury trial on all claims triable to the jury.

## RELIEF DEMANDED

WHEREFORE, Plaintiff requests the following relief from this Court:

A. Injunctive Relief against Defendant requiring it to refrain from any further retaliatory conduct against the Plaintiff; restore Plaintiff's employment to the status quo prior to Defendant's retaliation and to require Defendant to cease and desist from any unfair, unlawful and discriminatory treatment of Plaintiff and other employees of Defendant in employment; and

B. Injunctive Relief against Defendant which is appropriate for the protection of Plaintiff and other employees from future discrimination based upon religion; and

C. Injunctive Relief against Defendant reinstating all rights and privileges to which the Plaintiff is entitled, and which have been denied to Plaintiff as the result of Defendant's unlawful conduct; and

D. Compensatory Damages for Plaintiffs' lost wages, denied promotions and denied or reduced benefits and other remuneration; and

E. Compensatory Damages for Plaintiffs' general damages including his emotional distress proximately caused by Defendant's conduct; and

F. For the payment by the Defendants of the Plaintiff's cost and reasonable attorney's fees as allowed under both federal and state law as cited above; and

G. For such other and further Orders which will prevent and deter further and similar retaliation, harassment, oppression, and silencing of the Plaintiff by the Defendants. Plaintiffs hereby reserve their right to seek leave to amend this Complaint to seek punitive damages against the defendants to the extent permitted by law.

DATED this 4th day of March, 2019.

HEARN LAW, PLC
*Attorney for Plaintiff*

By: _____
RICHARD A. HEARN

**VERIFICATION**

STATE OF IDAHO   )
                 : ss.
County of Bannock )

VERIFIED COMPLAINT – Page 9

I, SCOTT ISAKSEN, being first duly sworn upon oath, depose and state that I have read the foregoing document, and based on my information and belief so acknowledge and agree voluntarily that the foregoing document is true and correct.

DATED this 4 day of ~~February~~ March, 2019.

_____
SCOTT ISAKSEN

SUBSCRIBED AND SWORN TO before me this 4 day of ~~February~~ March, 2019.

_____
NOTARY PUBLIC FOR IDAHO
Residing at: Pocatello
My Commission Expires: 8/24/24

(SEAL)

